UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-CR-20352-LENARD

UNITED STATES OF AMERICA

v.

ODALYS ABREU,

        Defendant.
_____/

## STIPULATED FACTUAL BASIS
## IN SUPPORT OF GUILTY PLEA

ODALYS ABREU (hereinafter referred to as the "defendant" or ABREU) hereby acknowledges that, if this case were to go to trial, the United States would establish the following facts beyond a reasonable doubt:

As charged in the Indictment, from in or about November 2017 and continuing through approximately March 2018, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant did knowingly and willfully combine, conspire, and agree with her co-defendants David Bosch ("Bosch"), Tania Sanchez ("Sanchez"), Ledif Acanda Machado ("Machado"), and others to dispense without authorization of law and distribute a controlled substance, including oxycodone and other Schedule II narcotics, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(C).

Bosch and Sanchez, who owned and operated East Medical Office, Inc. ("EAST"), as a cash-only pill mill recruited ABREU from a prior fraudulent pain clinic where she was recruiting patients in order to bring purported patients to EAST to obtain medically unnecessary prescriptions

for Schedule II controlled substances. As a patient recruiter and drug diverter, ABREU brought to EAST at least eighteen (18) individuals who paid approximately $250 for each purported "medical consultation" with Physician 1 in order to receive Controlled II substances, especially oxycodone. ABREU's recruited patients received prescriptions from Physician 1 for at least five thousand (5,000) tablets of oxycodone 30 mg.

ABREU also conspired to distribute Controlled II substances, especially oxycodone, by offering to purchase oxycodone from Individual 1, whom she believed was an EAST patient recruiter. Bosch introduced Individual 1 to ABREU as a new line of supply. On approximately November 16, 2017, ABREU informed Individual 1 that Individual 1 needed to find a pharmacy to fill the EAST prescriptions so that Individual 1 could return to her with the pills. ABREU provided Individual 1 with her cell number and told Individual 1 that she usually pays $14 or $15 per pill but offered Individual 1 $15.50 per pill. On approximately April 26, 2018, at EAST, ABREU agreed to buy oxycodone pills from Individual 1 for $16 per pill.

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for a guilty plea to the charges against me. It does not include all the facts known to me concerning criminal activity in which I and others engaged. I make this statement knowingly and voluntarily because I am in fact guilty, as charged in the Indictment.

SANDRA MOSER
ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION

BENJAMIN G. GREENBERG
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

Date: 8/23/18        By: *(signed)*
                     ADAM YOFFIE
                     TRIAL ATTORNEY
                     CRIMINAL DIVISION, FRAUD SECTION

Date: 8/28/18        By: *(signed)*
                     ODALYS ABREU
                     DEFENDANT

Date: 8-28-18        By: *(signed)*
                     LAWRENCE BESSER
                     COUNSEL FOR DEFENDANT

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 18-CR-20352-LENARD

**UNITED STATES OF AMERICA,**

vs.

**ODALYS ABREU,**

        **Defendant.**
_____/

### GOVERNMENT'S SUPPLEMENTAL BRIEF
### REGARDING RULE 35 REDUCTION

The United States of America hereby files this supplemental brief in support of its motion for a Rule 35 reduction for Defendant Odalys Abreu:

**I.  Procedural Background**

1. On May 1, 2018, Abreu and her co-conspirators were charged by indictment with conspiracy to dispense and distribute Oxycodone, in violation of 21 U.S.C. § 846, in connection with the operation of a pill mill named East Medical Office, Inc. ("East Medical").

2. On August 28, 2018, Abreu pleaded guilty to conspiring to dispense and distribute Oxycodone.

3. On November 7, 2018, Abreu was sentenced to fifty-seven (57) months' imprisonment.

4. On April 10, 2020, the United States moved to reduce Abreu's sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure, seeking a thirty (30) percent reduction based on her substantial assistance in the investigation and prosecution of two other individuals.

1

The United States' requested reduction would result in a total sentence of forty (40) months for Abreu.

5. On April 17, 2020, Abreu filed a response to the United States' motion, asserting that the proposed reduction was "insufficient," and urging the Court to instead reduce Abreu's sentence by approximately forty (40) percent, resulting in a total sentence of thirty-four (34) months.

6. On April 27, 2020, the Court ordered the parties to file supplemental briefing setting forth the nature, extent, and quality of Abreu's cooperation.

## II.     Rule 35 Standard

7. Rule 35 of the Federal Rules of Criminal Procedure permits the Court, upon the government's motion, to reduce a defendant's sentence based upon his or her "substantial assistance in investigating or prosecuting another person." FED. R. CRIM. P. 35(b).

8. Importantly, the Court may reduce a defendant's sentence under Rule 35(b) "'only to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person,' and not on the basis of other factors." *United States v. Mora*, 703 Fed. Appx. 836, 843 (11th Cir. 2017) (quoting *United States v. Chavarria-Herrara*, 15 F.3d 1033, 1037 (11th Cir. 1994). *See also United States v. Manella*, 86 F.3d 201, 204 (11th Cir. 1996) (per curiam) ("The only factor that may militate in favor of a Rule 35(b) reduction is the defendant's substantial assistance.").

## III.    Defendant's Conduct and Cooperation

9. Abreu was a patient recruiter at the East Medical pill mill. As a patient recruiter, Abreu brought purported patients to East Medical to obtain medically unnecessary prescriptions

for Oxycodone.  *See* Factual Proffer, ECF No. 86.  Abreu also conspired to purchase Oxycodone from her patients in order to re-sell the drugs at a profit.  *Id.*

10. Approximately three months after her indictment, Abreu began cooperating by meeting with law enforcement to provide information on her unlawful conduct as well as that of others.  During her initial debrief, Abreu revealed that prior to East Medical she also served as a patient recruiter at another pill mill, West Medical Office, Inc. ("West Medical").

11. In her debriefings with law enforcement, Abreu provided information that substantially assisted the United States in its investigation and prosecution of two doctors who worked at these pill mills: Dr. Rodolfo Gonzalez-Garcia at West Medical, and Dr. Victor Espinosa at East Medical.

12. Dr. Gonzalez-Garcia (19-CR-20055-RKA) was prosecuted by Assistant United States Attorney Michael Gilfarb.  During her debriefs, Abreu provided helpful information concerning Dr. Gonzalez-Garcia's unlawful practices at West Medical.  In addition to her debriefs, AUSA Gilfarb met with Abreu approximately three times in order to prepare her to testify at trial against Dr. Gonzalez-Garcia.  Ultimately, however, Dr. Gonzalez-Garcia pleaded guilty, and the United States believes Abreu's expected testimony contributed to this decision.  Judge Altman sentenced Dr. Gonzalez-Garcia to ninety-six (96) months' imprisonment.

13. Dr. Espinosa (19-CR-20100-DPG) was prosecuted by former Assistant United States Attorney Brian Shack.  In her debriefs, Abreu provided helpful information concerning Dr. Espinosa's unlawful practices at East Medical.  Reports of Abreu's statements were turned over to Dr. Espinosa after he was indicted.  Dr. Espinosa ultimately pleaded guilty.  While Abreu was not a critical government witness against Dr. Espinosa, she nevertheless provided substantial

assistance in the government's investigation and prosecution of Dr. Espinosa. Judge Gayles sentenced Dr. Espinosa to sixty (60) months' imprisonment.

14. Based upon the substantial assistance Abreu provided the government in the investigations and prosecutions of Dr. Gonzalez-Garcia and Dr. Espinosa, the United States recommends a thirty (30) percent reduction in Abreu's sentence. The requested reduction would result in a total sentence of forty (40) months for Abreu.

## IV. Defendant's Arguments

15. Abreu argues that the United States' proposed reduction of thirty (30) percent is "insufficient" because the timing of her cooperation warranted "two bites at the apple," via a 5K1.1 motion for the assistance she provided before sentencing and a Rule 35 for the assistance she provided after sentencing. *See* Abreu's Response, ECF No. 124, ¶ 5. Abreu also appears to suggest that the United States' Rule 35 motion does not "tak[e] into account all of her substantial assistance." *Id.* ¶ 3.

16. Abreu's arguments are unavailing, as they are contrary to the law and facts. First, the United States' Rule 35 motion does take into account all of the substantial assistance Abreu provided in the government's investigation and prosecution of other individuals. Abreu appears to implicitly acknowledge this in her response: "[T]he Defendant has given substantial assistance in the prosecution of two other individuals." *Id.* ¶ 2. As detailed above, the United States' motion seeks a reduction in Abreu's sentence based on her cooperation against those same two individuals.

17. Second, Abreu cites no authority for the proposition that the timing of her cooperation obligated the United States to file both a 5K1.1 motion before sentencing and a Rule 35 motion after sentencing, thereby giving her "two bites at the apple." That is because the United States retains sole discretion in determining whether, and when, to file such motions. This is

4

supported by Abreu's plea agreement, which provides that the United States "reserves the right to evaluate the nature and extent of the Defendant's cooperation," and retains the "sole and unreviewable judgment" regarding the propriety of any such motions. Abreu Plea Agreement, ECF No. 87, ¶ 10. In her plea agreement, Abreu also agreed "that nothing in this agreement may be construed to require the United States to file [a 5K1.1 or Rule 35 motion] and that the United States' assessment of the nature, value, truthfulness, completeness, and accuracy of the Defendant's cooperation shall be binding on the Defendant." *Id.*

18. Finally, Abreu requests that, in light of her health conditions and the COVID-19 pandemic, "she be allowed to serve the remainder of her sentence under house arrest with electronic monitoring." Abreu's Response, ECF No. 124, ¶ 7.

19. This request should be denied for two independent reasons. First, the Court does not have the statutory authority to grant Abreu's request to transfer her to home confinement. Such designation decisions are committed solely to the Bureau of Prisons' discretion: Once a sentence is imposed, BOP is solely responsible for determining an inmate's place of incarceration. *See* 18 U.S.C. § 3621(b); *Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973) (per curiam); *see also McKune v. Lile*, 536 U.S. 24, 39 (2002) (plurality opinion) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."). Courts do not have authority to designate a prisoner's place of incarceration. *United States v. Voda*, 994 F.2d 149, 151-52 (5th Cir. 1993).

20. Second, "[t]he only factor that may militate in favor of a Rule 35(b) reduction is the defendant's substantial assistance." *Manella*, 86 F.3d at 204. Abreu's health condition and the COVID-19 pandemic are therefore irrelevant to the Court's disposition of the United States'

Rule 35 motion. The Court should make its decision based solely on its evaluation of the nature, extent, and quality of Abreu's cooperation, as set forth above.

**V.    Conclusion**

21.    The United States respectfully requests that the Court grant its motion and reduce Abreu's sentence by thirty (30) percent, resulting in a total sentence of forty (40) months' incarceration.

                                                    Respectfully submitted,

                                                    ROBERT ZINK
                                                    CHIEF, FRAUD SECTION

                                                    ARIANA FAJARDO ORSHAN
                                                    UNITED STATES ATTORNEY

By:    */s/ Alexander Thor Pogozelski*
       Alexander Thor Pogozelski
       Florida Special Bar No. A5502549
       Trial Attorney
       United States Department of Justice
       Criminal Division, Fraud Section
       1400 New York Avenue, N.W.
       Washington, D.C. 20005
       Tel: (202) 510-2208
       Email: alexander.pogozelski@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that, on May 4, 2020, I served and filed the forgoing document with the Clerk of the Court via CM/ECF.

          By:    */s/ Alexander Thor Pogozelski*
                  Alexander Thor Pogozelski
                  Florida Special Bar No. A5502549
                  Trial Attorney
                  United States Department of Justice
                  Criminal Division, Fraud Section
                  1400 New York Avenue, N.W.
                  Washington, D.C. 20005
                  Tel: (202) 510-2208
                  Email: alexander.pogozelski@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 18-CR-20352-LENARD

UNTIED STATES OF AMERICA

V.

ODALYS ABREU,
Defendant.

_____/

### RESPONSE TO GOVERNMENT'S MOTION FOR A RULE 35 REDUCTION OF SENTENCE

The Defendant, Odalys Abreu, by and through her undersigned attorney, responds to the Government's Motion for a Rule 35 reduction of her sentence as follows:

1. On November 7, 2018, the Defendant was sentenced to a term of 57 month imprisonment for conspiracy to distribute oxycodone.

2. As noted in the Government's motion, the Defendant has given substantial assistance in the prosecution of two other individuals. The Government's motion does not specify that these two individuals were the lead defendants in each of their cases, and were doctors running "pill mills". The Government is asking for a reduction in the Defendant's sentence from 57 to 40 months imprisonment.

3. The defendant asserts that the Government's proposed reduction in her sentence is insufficient. Prior to her sentencing, the Defendant had already given substantial assistance as to individual #1. This Substantial assistance was enough to have warranted the Government filing a 5K1.1 motion on her behalf prior to sentencing. The United States

Attorney's Office, at that time, assured the Defendant that even though they were not filing a 5K1.1 motion prior to sentencing, if the Defendant continued to cooperate with the Government, post sentencing, a Rule 35 would be filed on her behalf taking into account <u>all</u> of her substantial assistance.

4. The Defendant proceeded, post sentencing, without the benefit of any 5K1.1 motion having been filed, to provide substantial assistance as to individual #2. The Defendant's substantial assistance, both pre and post sentencing, consisted of multiple debriefings, and multiple pretrial preparation sessions concerning her trial testimony. Ultimately, as a result, in part, of the Defendant's substantial assistance, both individuals #1 and #2 were convicted and sentenced.

5. Had the Government filed an initial 5K1.1 motion prior to sentencing, and this Rule 35 motion post sentencing, it is likely that with "two bites of the apple", as is contemplated under the Sentencing Guidelines and Rules of Criminal Procedure, the Defendant would be in line for more than a 17 month reduction in her sentence.

6. Accordingly, the Defendant believes a reduction in her sentence of 23 months, to a total of 34 months imprisonment would be a more appropriate reduction given the scope of her substantial assistance herein.

7. More importantly, whatever reduction this Court grants to the Defendant, the Defendant would respectfully request that she be allowed to serve the remainder of her sentence under house arrest with electronic monitoring.

8. With a reduction of her sentence to either 40 or 34 months, the Defendant, with her gain time of 15%, will have already served in excess of 1/2 of her total sentence.

9. The Defendant would direct this Courts attention to paragraphs 69-70 of her pre sentence investigation report. As noted therein, the Defendant stands 5 feet 4 inches tall and weighs an excess of 250 pounds. As a result of her obesity, she suffers from diabetes, hypertension, a fatty liver, as well as a major depressive disorder due to a prior miscarriage. At the time of her sentencing, as detailed in her pre sentence investigation report, she was being prescribed approximately 15 various drugs for her various medical conditions.

10. The Defendant is precisely the type of individual with substantial underlying medical conditions which put her at high risk for Covid-19. As per various recent news reports, correctional officers have tested positive for Covid-19 at FDC, and there is insufficient social distancing in effect at FDC to adequately protect certain at risk inmates such as the Defendant.

11. For the past 17 months the Defendant has been a model inmate and received no disciplinary reports against her. Although the crime for which she was convicted is serious, she is a non-violent offender and presents zero risk of danger to the community should she be allowed to finish the remainder of her sentence under house arrest with an electronic monitor. Furthermore, this will also save the Government substantial amounts of money which they are currently spending to treat her medical conditions.

12. The Defendant, from the day of her arrest, has attempted to do the right thing and has done so in two separate cases.

WHEREFORE, the Defendant, Odalys Abreu respectfully requests this Honorable Court reduce her sentence from 57 to 34 months and allow her to serve the remainder of her sentence under house arrest with electronic monitoring.

Respectfully submitted:

/s/ Lawrence E. Besser
Lawrence E. Besser, Esq.
1200 Brickell Avenue
Suite 1950
Miami, FL 33131
305-577-3873
FBN: 0236268
lbesseresq@yahoo.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed and furnished to all parties concerned via the Southern District of Florida E-filing Portal this 15th day of April, 2020.